UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAYANTHA FAVOURITE,

                    Plaintiff,

  -against-

55 HALLEY STREET, INC., THE BOARD OF
DIRECTORS OF 55 HALLEY STREET, INC., and
DIANE CURRENTI and DORIS BASILONE,

                   Defendants.

No. 16-cv-4285(NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

       Plaintiff Rayantha Favourite ("Plaintiff" or "Favourite") commenced this action on or

about June 9, 2016 against 55 Halley Street, Inc. and its Board of Directors (the "Board"), and

Diane Currenti ("Currenti") and Doris Basilone ("Basilone") in their individual and board

member capacity. (Complaint, ECF No. 5.) Plaintiff asserts fifteen (15) causes of action,

including six (6) federal claims sounding, *inter alia*, in discrimination arising out of events

concerning her residence at 55 Halley Street, Yonkers, NY. (*Id.*) Plaintiff seeks monetary and

injunctive relief, including a court order preventing 55 Haley Street, Inc. from terminating her

rights to cooperative shares and a proprietary lease to apartment 7C at 55 Haley Street, Yonkers,

NY. (*Id.*) Presently before the Court is Defendants' motion for summary judgment. (Defs.' Mot.

for Summ. J., ECF No. 39.) For the following reasons, Defendants' motion is GRANTED.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE: 5/23/2019

# BACKGROUND

The following facts are derived from the parties' respective Local Rule 56.1 statements, pleadings, and a review of the record.

Plaintiff is the owner of cooperative shares of 55 Haley Street, Inc. and the lease holder to 55 Haley Street, Apartment 7C, Yonkers, NY. (ECF No. 40, Affidavit of Jonathan Kolbrener ("Kolbrener Aff.") Ex. 3, Deposition of Rayantha Favourite ("Favourite Dep. Tr.") at 27-28.) The cooperative building has fifty-three (53) apartments. (Kolbrener Aff., Exh. E, Barbara Kehoe Deposition ("Kehoe Dep. Tr.") at 69,70.) Apartment 7C is a two-bedroom unit located on the top, seventh floor of the building. (Favourite Dep. Tr at 26, 27, 29.)

Plaintiff is black and of Guyanese descent. (*Id.* at 9.) There are other residents of color in the building. (Favourite Dep. Tr. 81: 21-23.) Plaintiff moved into Apartment 7C in 2007. (Favourite Dep. Tr. at 27-28.) Shortly after moving into her apartment, Defendant Basilone asked her in a degrading manner, "How can you afford to live here?" (Favourite Dep. Tr. 78:24-25-79:1-5.) It is uncontested that Plaintiff has a proprietary lease applicable to her apartment. (Kolbrener Aff., Ex. H ("Proprietary Lease"); ECF No.35, Affidavit of Ralph J. Elefante in Opposition to Motion for Summary Judgment ("Elefante Aff."), Ex. 4, Affidavit of Rayantha Favourite ("Favourite Aff.") ¶ 2.). Because Plaintiff purchased the apartment from the sponsor, there was no need for a board interview. (Favourite Dep. Tr. at 29. )Plaintiff was employed as a dancer. (Favourite Dep. Tr. 18:1-25; 21:22-25-22:1-10.)

In March 2008, Defendant Currenti purchased Apartment 6C at 55 Haley Street and moved into the apartment with her adult daughter Danielle Currenti ("Danielle"). (ECF No. 42, Affidavit of Diane Currenti ("Currenti Aff.") ¶ 2.) Currenti's apartment, 6C, is located directly below the Plaintiff's apartment. (Favourite Dep. Tr. 31:21-25-32:1-15). Also, in March 2008, an

employee for Prime Locations, Inc., the property manager of the building at the time, sent Plaintiff a letter asking her to refrain from playing loud music in her car while in the parking lot and asking her to center her car properly in her parking space. (ECF No. 41, Affidavit of Doris Basilone ("Basilone Aff.") Ex. 5, at 2.)

Roughly six (6) months after Defendant Currenti moved in, she began to complain about what she described as excessive noise and marijuana odors emanating from Plaintiff's apartment. (Currenti Aff. Ex. 2, at 2.) Defendant Currenti wrote forty-eight (48) complaint letters between September 4, 2008 and January 4, 2016 to various members of the cooperative Board and to the building manager. (*Id.* at 2-53.) Defendant Currenti complained that Plaintiff "sits in her car in front of the building" with various people driving up to her car, talking then leaving until another car arrives." (*Id.*at 2.)

On September 16, 2008, the assistant property manager for the building, Kenyatta Smith-Jackson, wrote Plaintiff a letter stating that it had come to her attention that the tenant in 7C was "causing constant noise disturbances for those who live around them." (Currenti Aff. Ex. 3, at 4.) Jackson referenced the cooperative House Rules prohibiting disturbing noises in the building. (*Id.*) The House Rules also require the carpeting of most floors. (*Id.)* The Board eventually verified that Plaintiff was in compliance with the carpeting rule. (Elefante Aff. Ex. 1, Basilone Dep. Tr. 54: 1-12.)

On November 5, 2008, Plaintiff wrote to Smith-Jackson requesting a meeting with the Board to address "harassment, slander and deformation[sic] of my character." (Currenti Aff. Ex. 3, at 5-6.) On January 5, 2009, John Janis ("Janis") of Stillman Management, the building's new management company, sent Plaintiff a letter advising her that management had received a letter from Currenti's attorney reiterating the complaints about excessive noise coming from the

apartment. The letter requested that Plaintiff contact management about setting up an apartment inspection to ensure that she followed the House Rules regarding carpeting. (Basilone Aff. Ex 5, at 7.)

At some point thereafter, Plaintiff wrote an undated letter complaining of "harassment" and that Defendant Currenti was knocking on Plaintiff's floor (Defendant Currenti's ceiling) causing Plaintiff's belongings and personal property to fall over.[1] (*Id.* at 8.) On January 15, 2009, Janis wrote to Defendant Currenti, asking her to refrain from banging on the ceiling and to contact him so the dispute could be settled amicably. (*Id.* at 9.) At around this time, the Board's then president, Barbara Kehoe ("Kehoe"), initiated an investigation into Defendant Currenti's complaints about Plaintiff.[2] Two Yonkers Police Department Detectives observed Plaintiff from outside the building on the street at different times over the course of two days. (Kolbrener Aff. Ex. 5, Deposition of Non-Party Witness Barbara Kehoe ("Kehoe Dep. Tr.") 53:6-25; 55:21-24). However, the detectives told Kehoe they did not observe any behavior out of the ordinary or illegal. (Kehoe Dep. Tr. 55:5-20). They simply found that Plaintiff came home late at night. (*Id.*)

On March 13, 2009, Plaintiff wrote to the building management, stating she was unaware of any reason Defendant Currenti would have cause for complaint and reiterated her complaints about Defendant Currenti. (Basilone Aff. Ex. 5, at 12.) Janis replied that he was sorry to hear that the problem was continuing and that he would pass her email along to the Board. (*Id.*)

---

[1] Plaintiff stated that "her harassment has overwhelmed me with an amount of stress which has caused me to feel like I am a prisoner in my own home." (Basilone Aff. Ex 5, at 8.)

[2] A building management letter from February 23, 2009, sent to both Plaintiff and Defendant Currenti refers to the fact that police had been called to the building on several occasions and that management was awaiting from a report from Yonkers Police about the complaints. (Basilone Aff. Ex. 5, at 10.) The letter stated that once management receives these reports, it would schedule a time to meet with the parties involved to reach an amicable solution to the ongoing problem. (*Id.*)

On April 14, 2009, management sent a letter to Plaintiff about the level of noise emanating from her apartment.[3] (Basilone Aff. Ex. 5, at 13.) On April 19, 2009, Plaintiff wrote to Stillman Management that Defendant Currenti was knocking on her floor and making lots of noise for no apparent reason.[4] (Basilone Aff. Ex. 5, at 12.) On April 24, 2009, Janis sent a letter to both Defendant Currenti and Plaintiff Favourite stating that the co-operative strongly urged unit owners and residents to resolve their issues by participating in mediation. (*Id.* at 14). The co-operative encouraged both parties to contact the Westchester County Mediation Center to make an appointment for mediation services. (*Id.*)

On May 20, 2009, Defendant Currenti and Plaintiff signed a mediation agreement. (Elefante Aff. Ex. 6, at 2.) Among other things, the agreement stated that the parties have resolved their dispute and agreed to a full and final settlement of all issues in the case. (*Id.*) Both Plaintiff Favourite and Defendant Currenti agreed to "respect one another's lifestyles and schedules." (*Id.*) They agreed to call each other directly in the event of unusual or disturbing noise at any time and if either party received a letter or notice about the other from the building's management, they agreed to call each other directly and resolve the issue. (*Id*)

In March 2011, Kehoe left the Board and Defendant Basilone became the new president. (Basilone Aff. ¶¶ 2-3; Kehoe Dep. Tr. 127:20-22.) On November 24, 2012, an altercation occurred in the hallway of the building. (Basilone Aff. Ex. 5, at 23-24.) Defendant Currenti claims that Plaintiff cornered Danielle in the elevator and started cursing at her. (Basilone Aff. Ex. 5, at 5.) Defendant Currenti was not in the building at the time of the incident but telephoned

---

[3] The letter stated there have been reports of slamming doors, furniture being removed and loud music being played in Plaintiff's apartment. (Basilone Aff. Ex. 5, at 13.)

[4] Plaintiff stated that Defendant Currenti was knocking on her floor and making noise for no apparent reason. (Basilone Aff. Ex. 5 at 12.) Plaintiff stated she was "going out [her] mind with the woman downstairs," referring to Defendant Currenti. (*Id.*)

Defendant Basilone and asked her to intervene. (Elefante Aff. Ex. 1, Deposition Transcript of Doris Basilone ("Basilone Dep. Tr."), 88: 1-15.) When she arrived, Basilone placed herself between the Plaintiff and Danielle in order to prevent the Plaintiff from attacking Danielle. (Basilone Aff. ¶ 6.)

Kehoe, the former president of the Board, also observed the incident and testified that she saw Plaintiff cornered by the elevator and surrounded by Defendant Basilone, Marilyn Marinelli ("Marinelli") of apartment 6D, Danielle, and a man named Jake. (Kehoe Dep. Tr. 77:1-25.) Kehoe noted the individuals were yelling at Plaintiff and would not let her pass. (*Id*.) Kehoe saw Defendant Basilone push Plaintiff with her hand and hold her in a threatening manner by the shoulder. (Kehoe Dep. Tr. 78:7-10). Kehoe also testified, that at a different time, Defendant Basilone stated: "she couldn't deal with her super any longer" because he was "big, and he was black, and he scared her." (Kehoe Dep. Tr. 32:6-10; 32:15-16).

A review of the Board meeting minutes by Defendant Basilone indicates that there were no complaints made of the Plaintiff between August 2009 through April 2, 2013. (Basilone Dep. Tr. 137:12-17.) There were no also no complaints made by Defendant Currenti during the more than two year period from February 24, 2013 through May 3, 2015. (Basilone Aff. ¶11; Ex. 4, at 2-53.)

In June 2014, Defendant Currenti became a board member of 55 Haley Street, Inc. (Currenti Aff. ¶ 9.) In 2015, Defendant Basilone was Board president, Defendant Currenti was vice president and Julie Salles was the treasurer. (Basilone Dep. Tr. 132:6-25.) The Board was required to have at least three and no more than seven directors. (Elefante Aff. Ex. 3, at 5.) The Board could hold meetings without notice. (*Id.)*

On Sunday May 3, 2015, Defendant Currenti wrote to Stillman Management, and the other Board directors, that on May 2, 2015, she was jolted awake from the noise Plaintiff was making. (Basilone Aff. Ex. 8, at 5.) On May 6, 2015, Marinelli, another resident in the building, wrote a complaint letter concerning noise coming from Plaintiff's apartment. (ECF No. 43, Affidavit of Julie Salles, Ex. 1, at 2.)

On June 11, 2015, the cooperative's attorney, Robert Beck ("Beck"), wrote a letter to Plaintiff reiterating the various complaints against her since 2009, including unreasonable and excessive noise throughout various hours of the day from dropping and banging things on the floor, stomping on the floor of the apartment, playing loud music and TV, and late and loud parties. (Currenti Aff. Ex. 8, at 2-3.) The letter also cited Plaintiff's repetitive smoking of marijuana and reports of confrontational conduct between the Plaintiff and other residents. (*Id.*) The letter reminded Plaintiff to comply with the cooperative's House Rules and Proprietary Lease. (*Id.*) The letter warned that should there be any further repetition of the described conduct, legal action would commence against her. (*Id.*)

Defendant Currenti made multiple noise complaints about Plaintiff for the remainder of 2015 through October 2016. (Currenti Aff. Ex. 4, at 7-23.). On September 29, 2015, Beck wrote another letter to Plaintiff warning her that should further complaints be received, legal action would be commenced to terminate the proprietary lease and to evict Plaintiff from the premises. (Currenti Aff. Ex. 8, at 5.)

On October 26, 2015, Beck sent Plaintiff a Notice to Cure.[5] (Basilone Aff. Ex 10, at 2-5.) The Notice states that Plaintiff was in default of "section 18(b) of the Proprietary Lease and

---

[5] The purpose of a Notice to Cure is to specifically apprise the tenant of claimed defaults in its obligations under the lease and of the forfeiture and termination of the lease if the claimed default is not cured within a set period of time. *Filmtrucks, Inc. v. Express Indus. & Terminal Corp*., 127 A.D.2d 509, 510 (1987).

House Rule #5" from September 2008 until October 2015. (*Id*.)  The Notice alleges that Plaintiff

had engaged in a course of conduct at various times that "unreasonably disturbs, threatens and

annoys" other lessees. (*Id*.)[6] The Notice indicates that  Plaintiff engaged in physical and verbal

confrontations with other Lessees and residents in the building in which she had acted in "an

aggressive and belligerent manner causing them unreasonable fear and alarm and concern for

their safety and the safety of others."  (*Id*.) On November 30, 2015, Beck sent Plaintiff a Notice

to Terminate because Plaintiff failed to take  corrective measure to comply with its lease

obligations as referenced in the Notice to Cure. (Currenti Aff. Ex. 6, at 2-4.)  More letters and an

attempted mediation followed. (Basilone Aff. Ex. 9, at 2-3; Basilone Aff. Ex. 12, at 2.) On June

9, 2016, Plaintiff filed this action. (ECF No. 5.)

There were twenty-seven (27) letters sent to building residents other than Plaintiff

Favourite between January 5, 2009 and June 1, 2016 in connection with noise. (Basilone Aff. Ex.

13, at 2-23.) Basilone states that these warning letters "achieved the desired results." (Basilone

Aff. ¶ 16.) There is no evidence in the record that anyone else was sent a Notice to Terminate.

As of April 19, 2017, Plaintiff's fulltime address was 55 Haley Street, Apt. 7C.

(Favourite Dep. Tr. 4:9-10; 5:8-9.) Plaintiff was staying with a friend in Connecticut

approximately five days a week since she first received the Notice to Cure. (Favourite Dep. Tr.

6:8-23.)  Plaintiff denies that she created unreasonable noise or disturbances in violation of the

proprietary lease or house rules or allowed unreasonable odors to escape her apartment.

---

[6] The Notice reiterated what had been previously complained about, stating that at various hours of the night and day, Plaintiff had dropped, banged and dragged things in her apartment and ran across and stomped on the floor of her apartment. The Notice further stated Plaintiff had played television and music late into the night and early in the morning. In addition, the letter stated Plaintiff had loud parties where marijuana was smoked.  The Notice stated Plaintiff had allowed loud noise and music to emanate from her car's music system and talked loudly to and with those who accompanied her to her apartment, which the Notice said, had awoken and disturbed residents of the building (Basilone Aff. Ex. 10, at 2-5.)

(Favourite Aff. ¶ 7.) In her deposition testimony, she invoked the Fifth Amendment when asked if she smoked marijuana. (Favourite Dep. Tr. 10, 14.)

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," see Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; accord *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "draw all rational inferences in the non-movant's favor," while reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to

determine a witness's credibility. *Anderson*, 477 U.S. at 249; see *also Kaytor v. Elec. Boat Corp*., 609 F.3d 537, 545 (2d Cir. 2010). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); see also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co*., 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).

## DISCUSSION

**Discrimination Under The FHA**

Plaintiff alleges the Defendants engaged in discriminatory housing practices on the basis of race in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et. seq. The FHA was enacted "to eradicate discriminatory practices within a sector of our Nation's economy." *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, —— U.S. ——, 135 S.Ct. 2507, 2511 (2015); see 42 U.S.C. § 3601. The language of the FHA is "broad and inclusive." *Trafficante v. Metropolitan Life Ins. Co*., 409 U.S. 205, 209 (1972). To properly assert a claim pursuant to the FHA, a plaintiff must show a relationship between the discriminatory conduct and her or her housing. See *Abrams v. Merlino*, 694 F. Supp. 1101, 1104 (S.D.N.Y.1988) ("[P]laintiffs, to succeed, must demonstrate ... a relationship between the harassment and housing.") Claims of housing discrimination under the FHA are viewed under the *McDonnell*

*Douglas* burden-shifting framework. *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003) (citing *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1038 (2d Cir.1979)).

Plaintiff asserts claims of discrimination under the FHA, 42 U.S.C. § 3604(b) ("Section 3604") and 42 U.S.C. § 3617 ("Section 3617"). Specifically, under Section 3604(b) Plaintiff alleges that the Defendants "created a hostile housing environment based on race." (Complaint, ¶ 153.) Section 3604 provides in relevant part, that it shall be unlawful to "discriminate against any person in the terms, conditions, or privileges of sale … a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin. 42 U.S.C.A. § 3604(b).  Courts in this Circuit have construed Section 3604(b) of the FHA to prohibit the creation of a "hostile environment" by individuals who have control or authority over the "terms, conditions, or privileges of sale or rental of a dwelling," similar to the prohibition imposed by Title VII against the creation of a hostile work environment. *Cain v. Rambert*, No. 13-CV-5807 MKB, 2014 WL 2440596, at *4 (E.D.N.Y. May 30, 2014) (citing *Ponce v. 480 E. 21st St., LLC*, No. 12–CV–4828, 2013 WL 4543622, at *2 (E.D.N.Y. Aug. 28, 2013)). A plaintiff asserting a hostile housing environment claim pursuant to Section 3604(b) must establish that (1) she was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile housing environment, (2) the harassment was because of the plaintiff's membership in a protected class, and (3) the defendant(s) is responsible for the allegedly harassing conduct towards the plaintiff. *Cain,* WL 2440596 at *5 (internal citations omitted).

The Second Circuit has cautioned that, because the above factors require highly fact-sensitive legal determinations, hostile environment cases are not well-suited to disposition on summary judgment unless on the facts alleged no reasonable jurors could differ on the conclusion to be drawn. See *Richardson v. New York State Department of Correctional Services*,

180 F.3d 426, 438 (2d Cir.1999). For the conduct to constitute harassment such that it creates a hostile environment under the FHA, it must be pervasive and serve and not merely isolated of sporadic. *See Abrams*, 694 F.Supp. at 1104; *Robles* v. *Goddard Riverside Community Center*, 1997 WL 475165, at *4 (S.DN.Y. June 17, 2009).

Under Section 3617, Plaintiff asserts that the Defendants "willfully and gross disregard of her right to use and enjoy her home created a hostile based on race (Complaint, ¶ 157, 58.) Section 3617 provides in relevant part, it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3604. 42 U.S.C.A. § 3617. "To prevail on a claim of retaliation under the FHA, a plaintiffs must establish: (1) that she engaged in protected activity by opposing conduct prohibited under the FHA; (2) that the defendant(s) was aware of the protected activity; (3) that the defendant(s) subsequently took adverse action against the plaintiff; and (4) that there is a causal connection between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse action." *Lynn v. Vill. of Pomona*, 373 F. Supp. 2d 418, 432 (S.D.N.Y. 2005), *aff'd*, 212 F. App'x 38 (2d Cir. 2007). The term "protected activity" refers to "'action taken to protest or oppose statutorily prohibited discrimination.'" *Miller v. Bd. of Managers of Whispering Pines at Colonial Woods Condo. II*, 457 F. Supp. 2d. 126, 131 (E.D.N.Y. 2006) (citing *Cruz v. Coach Stores, Inc*., 202 F.3d 560, 566 2d Cir. 2000)).

**FHA Statute of Limitations**

Defendants seek dismissal of Plaintiff claims prior to June 9, 2014 on the basis the claims are bared by the statute of limitations. (ECF No. 44, Memorandum of Law in Support of

Defendants' Motion for Summary Judgment ("Defs. Mem") at 14.)  Claims brought under the FHA are subject to a two (2) year statute of limitations. 42 U.S.C.A. § 3613(a)(1)(A). More specifically, the statute provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." Id. The statute of limitations may be tolled provided a plaintiff can demonstrate the defendant concealed the cause of action's existence, and that the plaintiff remained unaware of it until some point within the applicable statutory period of commencing the action. *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d at 291(March 31, 2011) (citing *Cardiello v. Money Store, Inc.,* No. 00–CV–7332, 2001 WL 604007, at *4 (S.D.N.Y. June 1, 2001)). Tolling of the statute of limitations period may be delayed "until the last discriminatory act in furtherance of it." *Shomo v. City of New N.Y.*, 579 F.3d. 176, 181 (2d Cir. 2009) (citations and punctuation omitted).

The two (2) year statute of limitation may also be extended under the  continuing violation doctrine. *Tejada v. LittleCity Realty LLC*, 308 F.Supp.3d 724, 733 (E.D.N.Y. 2018)(citing *Havens v. Coleman*, 455 U.S. 363, 380 (1982)). For the continuing violation doctrine to apply, a plaintiff must demonstrate that the alleged discrimination was "not just an isolated violation, but an ongoing policy of discrimination which extend into the limitations period. *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 373 (E.D.N.Y. 2012) citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982); *Grimes*,785 F.Supp.2d at 291–92. However, the continuing violations doctrine is "disfavored in this Circuit, and will be applied only upon a showing of compelling circumstances." *Lloyd v. WABC-TV,* 879 F. Supp. 394, 399 ( S.D.N.Y. 1995); *Falinski v. Kuntz*, 38 F. Supp. 2d 25, 257 (S.D.N.Y. 1999) ("The courts of this Circuit have generally been loath to apply the continuing violations doctrine …").

In her Complaint, Plaintiff's allegations date back to 2007, soon after moving into building.[7] Thereafter, there were sporadic incidents which culminated in the November 24, 2012 elevator altercation involving Plaintiff and Defendant Currenti's daughter Danielle. A review of the record reveals there were no complaints filed against Plaintiff from February 24, 2013 through May 3, 2015. On May 3, 2015, Defendant Currenti made a complaint to the building manager concerning loud noise coming from Plaintiff's apartment. On May 6, 2015, Marinelli similarly wrote a letter to management concerning noise from Plaintiff's apartment.

The Court finds that the continuing violations doctrine does not apply. First, much of the claimed discriminatory acts occurred within the two (2) year limitations period (the two years prior to June 9, 2016). Second, given the intermittent nature of the alleged discriminatory conduct and the lack of a showing that the Defendants concealed the cause of action's existence, the Court finds no basis for extending the applicable statute of limitations. Therefore, the Court excludes such claims which arose prior to June 9, 2014.

**Discrimination Analysis**

As previously discussed, to prevail on a claim of discrimination under the FHA, Plaintiff must demonstrate a relationship between the discriminatory conduct and housing. *Abrams*, 694 F. Supp. at 1104. Once the Plaintiff establishes a *prima face* case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory rationale for the challenged action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-03 (1973). If the Defendant articulates a non-discriminatory reason for the challenged action, the burden shifts back to the plaintiff to demonstrate that the discrimination was the real reason for the defendant's unlawful action. *Id.* at 804; *see e.g.*, *Schnabel v. Abramson*, 232 F.3d 83, 87 (1981); *Walsh v. New York*

---

[7] The alleged misconduct by Defendant Basilone, asking in a degrading manner, "How can you afford to live here?," may not rise to the level of a discriminatory act.

*City Housing Authority*, 828 F.3d 70, 74-75 (2d Cir. 2016). Stated differently, plaintiff must establish "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff always remains with the plaintiff. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

Plaintiff's allegations concern events that occurred after the Plaintiff acquired possession of her apartment. It is still an "open question" whether Section 3604 prohibits discrimination after a plaintiff acquires housing. *D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 366 (S.D.N.Y. 2017) (noting that in one case, *Khalil v. Farash Corp.*, 277 Fed.Appx.81, 84 (2d Cir. 2008)(summary order), the Court merely assumed a claim but did not decide it). Several trial courts in the Second Circuit have, however, construed § 3604(b) to hold that the FHA applies to post as well as pre-acquisition discrimination in the provision of housing-related services. *Davis v. City of New York*, 902 F. Supp. 2d 405, 436 (S.D.N.Y. 2012) ("[T]he law is best understood to prohibit post as well as pre-acquisition discrimination in the provision of housing-related services."); *see also Mazzochi v. Windsor Owners Corp*., 204 F. Supp. 3d 583, 607 (S.D.N.Y. 2016). Similarly, the Second Circuit has not definitively determined whether Section 3617 prohibits post-acquisition discrimination.[8] *See Haber v. ASN 50th St. LLC,* 847 F. Supp. 2d 578, 584 n.3 (S.D.N.Y. 2012) (collecting cases). In the instant matter, whether considering the Section 3604 or 3617 claims, a review of the records reveals a lack of evidence to support the essential element of discriminatory animus. Plaintiff has failed to proffer any evidence that the Defendants intentionally discriminated against her. *Reeves*, 530 U.S. at 143 (Plaintiff bears the

---

[8] The Second Circuit recently withdrew a ruling discussing a post-acquisition discrimination claim. *Francis v. Kings Manor, Inc*. 920 F.3d 168 (2d. Cir. 2019) (opinion withdrawn).

ultimate burden of persuasion that the defendant intentionally discriminated against him); *see also Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000).

Even if Plaintiff made such a showing, Defendants have proffered sufficient evidence to demonstrate that they had a legitimate non-discriminatory reason for sending the Notice to Cure and Notice of Termination. The record is replete with numerous complaints about excess noise purportedly emanating from Plaintiff's apartment. Most of the complaints were made by Defendant Currenti (whose apartment was immediately underneath Plaintiff's) but others in the building also complained about Plaintiff's alleged disturbances, including Salles, Defendant Basilone, and Marinelli. The record also reveals that the building management, on behalf of Board sent Plaintiff correspondence concerning the noise and the need to correct her behavior on multiple occasions. At the Board's behest, Plaintiff and Defendant Currenti went to mediation to solve their difference. The issue of race was never discussed nor raised as a factor. When the noise continued, the Board again encouraged Plaintiff to mediate the dispute with Defendant Currenti.

The record presented indicates that Plaintiff, prior to commencing this action, never raised the issue of race as a factor in her disagreements with any of the residents and/or the Board. The issue of race was first introduced upon filing this action. Plaintiff, however, suggests that Defendant Basilone, the Board president, used language that reflected a racial bias. In particular, Plaintiff points to Defendant Basilone's comments about the "types of people" she was bringing into the building, and inquiry concerning "How can you afford to live here?" as indicative of racial innuendo. While these types of comments may be considered circumstantial evidence of discrimination, *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 253 n.14 (S.D.N.Y. 2014), Plaintiff must proffer enough evidence "from which a reasonable fact finder

could conclude that these comments were laced with racial innuendo" as opposed to more neutral reasons for the comments. *Feacher v. Intercontinental Hotels Group*, 563 F.Supp.2d 389, 404 (N.D.N.Y. 2008); *Hill v. City of New York*, 136 F.Supp.3d 304, 337 (E.D.N.Y. 2015). The statements Defendant Basilone made were about lifestyle and noise, not about race. While it is true that a particularly hostile comment that a reasonable person might find objectively unreasonable, coupled with other evidence, might push the conduct to such a degree to support the element of discriminatory animus, in this instance such other evidence is lacking.

As further evidence of discrimination, Plaintiff offers Defendant Basilone's alleged remark that the super was "big, black and scary." While the Court certainly does not condone this remark, the Second Circuit has cautioned district courts to consider whether "stray remarks" are "too remote and oblique" in relation to the alleged adverse action. *Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 115 (2d. Cir. 2007), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *Kantrowitz v. Uniondale Union Free School Dist.*, 822 F.Supp.2d 196, 216 (E.D.N.Y. 2011)(citing *Ezold v. Wolf, Block Schott Solis-Cohen*, 983 F.2d. 509,545 (3d. Cir. 1992)("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.")). In short, Plaintiff has failed to provide "other indicia of discrimination" which might suggest to a jury that the stray remarks bear "a more ominous significance." *Danzen v. Norden Systems, Inc.*, 151 F.3d. 50, 56 (2d. Cir. 1998).

While it is well settled that "[a]n inference of discrimination" can be drawn when "similarly situated" individuals were "treated differently" (*Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir.1997)), the records shows that there are other residents of color in the building and no showing has been made that they were treated as unwelcomed as Plaintiff

alleges she was treated . Defendants sent twenty seven (27) noise warnings to residents of the

building, including Plaintiff. Some of the tenants also received multiple notices concerning

improper noise. Plaintiff was also cited for  purportedly smoking marijuana on the premises.

When questioned about her marijuana use during her deposition, Plaintiff invoked the Fifth

Amendment. While an adverse inference may be impermissible in a criminal setting, *Baxter v.

Palmigiano*, 425 U.S. 308 (1976), in a civil setting the court may draw a negative inference

against a party if the party asserts the Fifth Amendment privilege against self-incrimination in

response to probative evidence. *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. &

Trade Servs., Inc.*, 386 F. Supp. 2d 461, 464 (S.D.N.Y. 2005)(citing *LiButti v. United States*, 107

F.3d 110, 121 (2d Cir.1997)); *United States v. Certain Real Property and Premises Known as

4003–4005 5th Ave*., 55 F.3d 78, 82–83 (2d Cir.1995); *Adelphia Communications Corp. v. Rigas*,

317 B.R. 612, 623–24 (Bkrtcy.S.D.N.Y.2004). Such evidence, together with the documented

evidence of noise complaints provides sufficient support to demonstrate that the Defendants had

a race neutral basis for complaining about Plaintiff's behavior and for serving her with the

notices. Thus, it became incumbent upon Plaintiff to demonstrate the alleged basis for the

adverse action was nothing more than a pretext for discrimination. See, *McDonnell Douglas

Corp. v. Green*, 411 U.S. 792, 804 (1973). Plaintiff has offered no evidence that Defendants

actions are a pretext for discrimination as required.

Given the facts presented in this case, the Court is compelled to discuss *United States v.

Weisz*, 914 F.Supp.1050 (S.D.N.Y. 1996) which concerns disputing neighbors and allegations of

discrimination. In the complaint the Government asserted a claim pursuant to Section 3617

alleging that Weisz, a person of the Jewish faith, coerced, intimidated, threatened and interfered

with the Cronins' enjoyment of their dwelling because of the Cronins' religion. *Id.* at 1052. In

granting summary judgement to the defendant, the court described the action as "nothing more than a series of skirmishes in an unfortunate war between neighbors" having nothing to do with religion. *Id.* at 1055-56. Defendant's alleged offensive conduct included contacting the local police department to complain about "offensive behavior" such as public intoxication, children walking or trespassing onto her property and the placement of a basketball pole and hoop. *Id*. at 1052 and 1055. Here, the Court finds a somewhat similar situation wherein the parties dispute centers on their respective lifestyles. Plaintiff is single, works late nights, purportedly has heavy footsteps, may be clumsy because items are dropped causing unnecessary noise, may appear to enjoy playing loud music, and may even enjoy smoking marijuana. While some individuals may find Plaintiff's conduct objectionable and disruptive, their complaint lacks discriminatory animus. Simply stated, based on the facts as presented, there is no legal basis for elevating "a series of skirmishes in an unfortunate war between neighbors" to a federal discrimination case. *Id.* at 1054. *See also Cain,* 2014 WL 2440596 n.6 at *5; *Hebert v. Devito*, No. 18-CV-5287 2018 WL 4845737 at *2 (E.D.N.Y. October 4, 2018)(holding there was no basis for federal question jurisdiction and noting that federal courts hold no jurisdiction over landlord-tenant matters).

**Claims Under 42 U.S.C. §§ 1981, 1982, 1983 and 1985**

To establish a claim under 42 U.S.C. §§1981 and 1982, a plaintiff must prove the following elements: (1) the plaintiff is a member of a racial minority; (2) the defendant acted with the requisite intent to discriminate based on race; and (3) the discrimination concerned one or more of the activities enumerated in the statute including  the right to make and enforce contracts such as a real estate contract or lease agreement. See *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp*., 7 F.3d 1085, 1087 (2d Cir. 1993). While these sections cover different protected activities, they are construed together in light of their common purpose. *Tillman v.*

*Wheaton-Haven Recreation Ass'n, Inc.*, 410 U.S. 431, 439-40 (1973); *Choudhury v. Polytechnic Institute of New York*, 735 F.2d 38, 43 n.5 (2d Cir. 1984).

Plaintiff's claims under §§1981 and 1982 fail for the same reasons her claims fail under the FHA. Plaintiff has not proffered sufficient evidence to raise an issue of fact that the any of the named defendants, including the Board, acted with racial animus. *Mitchell v. Century 21 Rustic Realty*, 233 F.Supp.2d 418, 438 (E.D.N.Y. 2002), *aff'd*, 45 F. App'x 59 (2d Cir. 2002) (Plaintiffs "did not carry their burden of showing discrimination vel non by a preponderance of the evidence.")

To establish a claim under 42 U.S.C. §1983 ("Section 1983"), Plaintiff must show that he was denied a constitutional or federal statutory right and that the deprivation of that right occurred under color of state law. *See* 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 does not grant any substantive rights but rather "provides only a procedure for redress for the deprivation of rights established elsewhere," such as in the Constitution or a federal statute. *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993) (citation omitted), *cert. denied*, 512 U.S. 1240 (1994); *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Quinn v. Nassau Cty. Police Dep' t*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution"). "Because constitutional protections constrain only government actors, a plaintiff pursuing a § 1983 claim must show in the first instance that the alleged constitutional violation constitutes state action*." Jackson v. Barden*, No. 12-CV-1069 (KPF), 2018 WL 340014, at *13 (S.D.N.Y. Jan. 8, 2018) (citing *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012)). Private entities can be said to engage in state action where "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has

traditionally been the exclusive prerogative of the State*." Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009). "The fundamental question under each test is whether the private entity's challenged actions are fairly attributable to the state." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (internal quotation marks omitted) (quoting *Fabrikant*, 691 F.3d at 207). Although 55 Halley St. Inc. is incorporated by the laws of the state of New York, such conduct is insufficient to deem it a state actor under Section 1983. See *Tufano v. One Toms Point Lane Corp.*, 64 F.Supp.2d 119, 128 (E.D.N.Y. 1999)(citing *Leeds v. Meltz,* 85 F.3d 51, 54 (2d Cir.1996)). Extensive government regulation and even public funding, either alone or taken together, will not transform a private actor into a state actor. *Id*.  For the reasons stated, Plaintiff Section 1983 claim(s) must fail.

Plaintiff's §1985 ("Section 1985") claim also fails. Section 1985(3)  prohibits two or more persons from conspiring to "depriv[e], either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. §1985(3). The statute does not create any substantive right but rather  provides a remedy for conspiracies that violate a person's right to equal protection.  *Miller v. Board of Managers of Whispering Pines at Colonial Woods Condominium II*, 457 F. Supp. 2d 126, 130 (E.D.N.Y. 2006)(citing  *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir.1996). It is intended to deter not only state entities but private entities from violating a plaintiff 's rights to equal protection of the laws.  *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 834 (1983) ("we observed that the section does not expressly refer to the Fourteenth Amendment and that there is nothing "inherent" in the language used in § 1985(3) "that requires the action working the deprivation to come from the State" ); *Thomas v.*

*Roach*, 165 F.3d 137, 146 (2d. Cir. 1999); *Nasca v. County of Suffolk*, 933 F. Supp. 2d 437, 444 (E.D.N.Y. 2013).

To prevail on Section 1985 claim, a plaintiff must establish  (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586-87 (2d Cir.1988) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971).  Of significance, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian*, 7 F.3d at 1088 (quoting *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. at 829). As with several of the other claims, Plaintiff has not shown that racial animus accounts for Defendants' conduct. Accordingly, Plaintiff's Section 1985 conspiracy claim must also be dismissed.

### Plaintiff's State Law Claims

Having granted summary judgment to the Defendants on Plaintiff's federal claims, the Court now turns to Plaintiff's state law claims. As a preliminary matter, the Court must decide whether to retain  jurisdiction over the remaining  state law claims.  Federal courts have typically exercised jurisdiction over state court claims pursuant to diversity jurisdiction (28 U.S.C. § 1332) or supplemental jurisdiction (28 U.S.C. § 1367). Diversity jurisdiction involves actions between citizens of different States, citizens of a State and citizens or subjects of a foreign state or citizens of different States and in which citizens or subjects of a foreign state are additional parties. 28 U.S.C. § 1332(a); *Coudert Bros. v. Easyfind Int'l, Inc*., 601 F. Supp. 525, 526 (S.D.N.Y. 1985). Supplemental jurisdiction (formerly referred to as pendent jurisdiction) is the authority of a

federal court to exercise jurisdiction over a nonfederal claim between parties litigating other matters properly before the court, or the addition of an independent party when the claim against that party arises out of the same common nucleus of operative facts as the claims against the other named parties. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005); *Finley v. United States*, 490 U.S. 545, 548-49 (1989) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)). The Court in *United Mine Workers of Am.* held that "[Supplemental] jurisdiction, in the sense of judicial power, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States...,' and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' " *Id.* at 725. The requisite relationship exists when the federal and nonfederal claims "derive from a common nucleus of operative fact" and are such that a plaintiff "would ordinarily be expected to try them in one judicial proceeding." *Finley*, 490 U.S. at 548-49. A federal court may properly dismiss a claim for which it originally had supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367. Federal courts have also held that claims raising novel and complex questions of state law are better left for the state courts to resolve,and have generally declined to exercise jurisdiction. See *Donohue v. Mangano*, 886 F. Supp. 2d 126, 148 (E.D.N.Y. 2012)(citing *Seabrook v. Jacobson*, 153 F.3d 70, 71 (2d Cir.1998)). The Court notes that neither party has raised this issue in their moving papers, but a "[f]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lydonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).

Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same

case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a).

"The requisite relationship exists … when the federal and nonfederal claims 'derive from a

common nucleus of operative fact" and are such that a plaintiff 'would ordinarily be expected to

try them in one judicial proceeding.'" *U.S. v. Finley*, 490 U.S. 545, 549 (1989) (quoting *United*

*States Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966)) *superseded by statute*, 28 U.S.C.

§1367, *as recognized in Exxon Mobil Corp. v. Allapattah Services Inc*., 545 U.S. 546 (2005). A

federal court may properly dismiss a claim for which it originally had supplemental jurisdiction

if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §

1367. Claims raising novel and complex questions of state law are better left for the state courts

to resolve. *See, e.g.,  Seabrook v. Jacobson*, 153 F.3d 70, 71 (2d Cir. 1998); *Donohue v.*

*Mangano*, 886 F. Supp. 2d 126, 148 (E.D.N.Y. 2012).

  "[I]n the usual case in which all federal-law claims are eliminated before trial, the

balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy,

convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the

remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988);

*Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are

dismissed before trial, the state claims should be dismissed as well." );  *Valencia ex rel. Franco*

*v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003).  However, a district court need not only balance the

*Cohill* factors, but it may also consider whether the state law claims are closely tied to federal

policy. *Klein & Co. Futures, Inc. v. Board of Trade of City of New York*, 464 F.3d 255, 263 (2d.

Cir. 2006)(citing *Baylis v. Marriot Corp*., 843 F.2d 658, 665 (2d. Cir. 1988)("One factor that

may sometimes favor retaining pendent jurisdiction is when a state claim is closely tied to

questions of federal policy and where the federal doctrine of preemption may be implicated.")).

Regarding Plaintiff's state discrimination claims under New York Executive Law §296(5) and §296(6), which are factually intertwined with Plaintiff's FHA claims, the court will retain jurisdiction. As noted in *Haber*, 847 F.Supp.2d at 588, "the NYSHRL and NYCHRL contain language that is substantively identical to that of §§ 3604(a), 3604(b), and 3617 of the FHA, differing in that the NYSHRL and NYCHRL cover a broader range of protected classes." Additionally, New York Executive discrimination claims are "evaluated under the *McDonnell Douglas* burden shifting framework" as are the federal FHA claims. *Mitchell v. Shane*, 350 F.3d 39, 47 n.4 (2d. Cir. 2002); *Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 153 (2d. Cir. 2014). *See also Wilson v. Wilder Balter Partners*, No. 13–CV–2595 (KMK) 2015 WL 685194 at *9 (S.D.N.Y. February 17, 2015). Because Plaintiff's claims of alleged discriminatory treatment under the FHA fail for lack of discriminatory animus, a requisite element under the *McDonnell Douglas* test, Plaintiff's state law discriminatory treatment claims also fail.

With regard to the remaining state law claims, after balancing all the relevant factors, the Court declines to retain jurisdiction. While the Court recognizes that some judicial resources have been utilized on this case, given the nature of the remaining claims, they are best left for the state courts to resolve. Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the remaining state law claims are dismissed without prejudice to re-file them in state court.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for summary judgment is GRANTED to the extent of dismissing with prejudice Plaintiff's federal claims and state law claims sounding in discrimination (i.e. the FHA claims, 42 U.S.C. §§ 1981, 1982, 1983 and 1985 claims and New York Executive Law claims), and Plaintiff's state law claims are DISMISSED without prejudice to re-commence in state court. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 39, terminate the case, and enter judgment in accordance with this opinion.

Dated:  May 23, 2019                                     SO ORDERED:
        White Plains, New York

                                                        _____
                                                        NELSON S. ROMÁN
                                                        United States District Judge